# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**United States of America,**

                                                      Case No. 1:17cr029

    v.                                                Judge Michael R. Barrett

**Erik McCoy – 1,**
**Derrick Heard – 2,**

    **Defendants.**

## ORDER

This matter is before the Court following hearings conducted on July 6, 2017 and July 11, 2017 regarding Defendant Erik McCoy's Motion to Suppress (Doc. 31), Defendant Derrick Heard's Motion to Suppress (Doc. 32), and Defendant Erik McCoy's Motion for *Franks* Hearing (Doc. 33). The motions are fully briefed, and ripe for disposition.

## I. BACKGROUND

On October 14, 2016, officers with the Cincinnati Police Department applied for, obtained and executed two separate search warrants. The first warrant was for a building at 4403 Glenway Avenue, which is a two-story, brick structure housing a barbershop on the right and a connected apparel store on the left (D1; D6). The first warrant was authorized at 5:42 p.m. The second warrant was for a residence at 10515 Hadley Road. The second warrant was authorized 9:26 p.m. The affidavits in support of both warrant applications are the product of the same investigation.

1

The Defendants challenge both the veracity of, and probable cause for, the affidavits submitted in support of the applications for the relevant search warrants.[1] The first affidavit indicates that Officer Longworth was contacted by an "informant." The informant claimed that an individual known as "Derrick" sold marijuana from the Glenway Avenue establishment. According to the informant, Erik McCoy runs the barbershop and apparel store on Glenway Avenue, and also sells marijuana from those locations. The informant also indicated that Heard and McCoy shared a residence on Hadley Road. While the affidavit

---

[1] The Court previously **GRANTED** McCoy's Motion (Doc. 33) for a *Franks* Hearing, in order to understand the alleged discrepancies between the affidavits for search warrant (P1 and P2) and the Criminal Complaint filed with the District Court Clerk's Office (D3). Under *Franks*, a reviewing Court "set[s] to one side" an affidavit's false statements that were made by an affiant deliberately or with reckless disregard for their truth. 438 U.S. at 172. Thereafter, the reviewing Court must determine if the remaining information is sufficient to support a finding of probable cause. *Id*.

Here, the apparent discrepancies involve the length of the investigation, a "traffic stop" that led officers into the barbershop on Glenway Avenue, and items removed during the search itself. Specifically, the Criminal Complaint indicates that the investigation began on October 14, 2016, when Officer Mark Longworth ("Officer Longworth") received information from a confidential source (D4). The government concedes that this paragraph is inaccurate. The Criminal Complaint further states the officers observed Defendant Heard leaving the area when he committed a traffic violation, which led to a traffic stop resulting in the observation of "plain view" marijuana (D4). The government concedes that this paragraph is also inaccurate. The Criminal Complaint further states that the Glenway Avenue search produced a .9 mm handgun and ammunition (D4, Para 7). While ammunition was recovered, a handgun was not– only a gun box (P1; Tr. 24). Although the Criminal Complaint contains inaccuracies, the same inaccuracies are resolved by testimony adduced at the hearing and do not appear in the affidavits. Accordingly, the Court will not excise any information from the affidavits to make its probable cause determinations.

The Court also rejects Defendants' arguments regarding the purported staleness of the anonymous tip. Even though the affidavit was silent on the timing of the anonymous tip, the affidavit contained other, corroborating information that specified a timeframe. *United States v. Saffell*, 526 Fed. Appx. 470, 477 (6th Cir. 2013) ("The fact that there was no specific time frame regarding the alleged videotaping is of no consequence with respect to staleness because the more recent information that was provided with a time frame corroborated the allegation.").

claims that Heard and McCoy sell drugs from 4403 Glenway Avenue, the affidavit is silent on whether the informant ever saw a drug sale take place at either the Glenway Avenue location or Hadley Road residence. However, the informant claims to have seen marijuana and guns at the Hadley Road residence.

According to the affidavit, Vincent Brown (whose real name was unknown at the time) also sells marijuana from the stores (P1). Heard, McCoy and Brown all have criminal records, according to the affidavit. McCoy and Brown's records were known prior to October 14, 2016, while Heard's record was confirmed while he was being detained (P1). Brown was on bond for an alleged felony and under investigation for robbery. However, as of the time of the initial receipt of this information, Officer Longworth did not know Brown or Heard's last names.[2]

Officer Longworth acknowledges the above-described information was insufficient to establish probable cause for search warrant, as the informant lacked a previous track record of reliability (Tr. 69). He testified that, without more, this information was insufficient for further action (Tr. 50 and 51). To gather additional information in support of a search warrant, Officer Longworth began surveillance of the Glenway Avenue address. He does not remember seeing McCoy or Heard at the location prior to the day of the search. He was focused on Brown (Tr. 64). Officer Longworth indicated in the affidavit that the establishment had the type of foot traffic he considered consistent with drug trafficking, and inconsistent with an athletic apparel shop or barbershop (P1). He further indicated that, on October 14, 2016, Brown and Heard arrived together in a black Honda with tinted windows

---

[2] Officer Longworth was later given Brown's last name by Officer Broering (Tr. 163), but was unaware that Brown was on an electronic monitoring unit.

and illegally parked at a bus stop. Brown was arrested outside of the barbershop for investigation of robbery and taken to District 3.[3] While officers were arresting Brown outside of the establishment, multiple officers entered the store to question Heard about the traffic violations (Tr. 42, 75-76). At that time, Heard had "probably a couple of ounces" on his person in plain view (Tr. 43-48), which Officer Longworth describes as a large bag (Tr. 73). This "plain view" testimony is supported by the cell phone video recording supplied by Defendants. In describing the marijuana on Heard's person, the affidavit states: "the affiant stopped Derrick Heard and noticed he had a large bag of marijuana hanging from his pants in 'plain view'" (P1; P2).[4] Heard also had several hundred dollars on his person, which was reflected in the affidavit (P1; P2).

Citing Heard's possession of marijuana as evidence corroborating the informant's tip about Heard and McCoy's alleged drug sales at the barbershop and athletic apparel store, law enforcement obtained a warrant to search all of the Glenway Avenue establishment. Law enforcement found an electronic scale, packaging material, a handgun box, handgun ammunition, and a handgun magazine (P1;P2). Law enforcement also found mail to McCoy at the Glenway Avenue establishment, although the affidavit does not state which address the mail listed (Glenway Avenue, Hadley Road, or a different address). Law enforcement used the fruits of the Glenway Avenue search to obtain a second warrant to search the home on Hadley Road, where Heard and McCoy were said to reside.

---

[3] This was a warrantless arrest (Tr. 25-32). Brown was later charged with a misdemeanor theft offense (Tr. 28), which was ultimately dismissed.

[4] Heard was never issued a traffic citation (Tr. 42) or marijuana citation (Tr. 75).

## II.   ANALYSIS

### A. Search 1—4403 Glenway Avenue

First, the Court will address the sufficiency of the information supplied by the confidential informant, which depends on the informant's reliability.

An informant's reliability is assessed as part of the "totality of the circumstances" test used to determine whether probable cause exists. *United States v. Allen*, 211 F.3d 970, 972 (6th Cir. 2000). When a court is assessing information from a confidential informant, the court must consider the informant's veracity, reliability, and basis of information as part of the totality of the circumstances analysis. *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). An informant's statements may be treated as trustworthy and reliable, even without corroboration, when the informant has a previous track record of reliability: "[I]f the prior track record of an informant adequately substantiates his credibility, other indicia of reliability are not necessarily required." *Id*. at 820 (quoting *United States v. Smith*, 182 F.3d 473, 483 (6th Cir. 1999)). Otherwise, an informant's statements are akin to an "anonymous tip" requiring corroboration. *Id*. "Anonymous tips . . . demand more stringent scrutiny of their veracity, reliability, and basis of knowledge than reports from confidential informants." *Id*.

Here, the affidavit includes none of the above-described indicia of reliability regarding the informant. Indeed, there is nothing in the affidavit that describes a basis for reliability of the informant's information. The Court must therefore look to whether the tipster's information was corroborated.

### 1. Corroboration

Absent the reliability addressed in Section II.A above, an anonymous tip must be accompanied by "substantial independent police corroboration" to support a finding of probable cause. *Allen*, 211 F.3d at 976. When attempting to obtain a warrant based on an anonymous tip, the accompanying affidavit "must contain a statement about some of the underlying circumstances indicating that the informant's information was credible or that his information was reliable." *Helton*, 314 F.3d at 822. A tip can take on an increased level of significance if corroborated, even in part, by later investigation. *Id.* at 823.

Beyond the information provided by the anonymous tipster, law enforcement cited the following information to obtain a warrant: (1) excessive "foot traffic" at 4403 Glenway Avenue; and (2) marijuana found on Heard's person. As further discussed below, the affidavit also corroborates the alleged association between Heard and Brown, who each have drug-related criminal histories.

#### a. Foot Traffic

Courts have considered "foot traffic" when making probable cause determinations. Specifically, excess foot traffic coming to and from a residence may help support a search warrant for drug-related activity. *United States v. Perry*, 864 F.3d 412, 415 (6th Cir. 2017); *United States v. Williams*, 272 Fed. Appx. 473, 476 (6th Cir. 2008). However, the Court is not persuaded that "foot traffic" coming to and from a business establishment is sufficient to corroborate an anonymous tipster's information regarding alleged drug sales. *Cf. United States v. Serrano*, 450 F. Supp. 2d 227, 234 (S.D.N.Y. 2006) ("[S]urveillance of East Coast Customs was of limited use given the foot traffic into and out of the establishment, which made it difficult to differentiate legitimate customers from those involved with Serrano's

drug trade."). It appears that Officer Longworth attempted to provide context for his observations when he stated the following in his affidavit: "On several occasions, the affiant observed a large amount of foot traffic consistent with drug trafficking and not consistent with the type of business operating there." (P1; P2). Still, the foregoing conclusory statement is insufficient to corroborate the tipster's information. Indeed, Officer Longworth conceded at the hearing that the foot traffic, even combined with information from the anonymous tipster, was insufficient to obtain a search warrant for 4403 Glenway Avenue (Tr. 69).

Absent additional information regarding *why* the volume of foot traffic at 4403 Glenway Avenue was inconsistent with the nature of the business, the Court finds that observations regarding foot traffic to and from a business to be insufficient corroboration of drug trafficking. Otherwise, an anonymous tip plus observations of "foot traffic" could legitimize a search of a virtually any business open to the public, which businesses necessarily invite foot traffic.

    b. **Marijuana on Heard's Person**

The marijuana seized from Heard's person raises a number of questions, which the Court will address in turn. First, was the marijuana legally seized? Second, did the presence of two bags of marijuana, plus "several hundred dollars" of cash, corroborate the tipster's claim that Heard sold drugs at Glenway Avenue? Third, even if the marijuana discovered on Heard's person sufficiently corroborated the tipster's information, was there a sufficient nexus between the discovery and the location to justify a search warrant for all of 4403 Glenway Avenue?

### i. The Marijuana was Legally Seized

The Court will first address Heard's claims that the "discovery of the marijuana" (Doc. 42; PAGEID# 430) must be suppressed because law enforcement arrived at the scene illegally. Specifically, Heard claims that the marijuana was spotted on his person only because of a delayed "traffic stop" to discuss Heard's window-tinting, which stop is unconstitutional because "a completed traffic misdemeanor cannot hang over a suspect indefinitely until a time at which he has engaged in some other suspicious activity that officers believe warrants a pretextual stop." (Doc. 42; PAGEID# 427) (quoting *United States v. Mendoca*, 682 F. Supp. 2d 98, 104 (D.Mass. 2010)). While the Court recognizes the principle reflected in *Mendoca*, officers ultimately did not need a traffic stop – pretextual or otherwise – to enter into the barbershop. While the traffic stop was certainly unconventional, the officers were authorized to enter into a business establishment open to the public. *United States v. Morton*, 17 F.3d 911, 913-914 (6th Cir. 1994) (affirming denial of motion to suppress, where officers entered into an "auto shop [that] was open to the public for business" and seized a gun that was visible in defendant's back pocket). The fact that Heard emerged from the back, with marijuana in plain view, does not change the fact that law enforcement initially entered the barbershop legally. *Id*. Once law enforcement spotted marijuana in plain view, they were authorized to search Heard. *Id*. Accordingly, the two bags of marijuana found on Heard's person will not be suppressed.

### ii. The Marijuana Corroborates the Tipster's Allegation

Whether the marijuana seized substantially corroborates the anonymous tipster's information requires a different analysis.

The affidavit in this case provided the following information regarding Heard from the anonymous tipster: "Derrick," a heavy set male, sells marijuana from the businesses at Glenway Avenue and lives with Erik McCoy. Erik McCoy works at the barbershop at 4403 Glenway Avenue. The tipster has seen "Derrick" in possession of marijuana. The tipster has also seen marijuana and guns inside "Derrick" and McCoy's residence on Hadley Avenue.

Here, the marijuana in plain view certainly corroborated the tipster's allegations that he or she had seen Heard in possession of marijuana in the past. However, the question is whether two bags of marijuana in the pocket of Heard (a convicted drug dealer), along with "several hundred dollars of US currency" (P1), sufficiently corroborates the allegation that Heard was a current drug dealer who sold marijuana from the Glenway Avenue establishment.

This is a close call. Certainly, the sufficiency of the corroboration would be clear if law enforcement had observed a drug transaction, or effected a controlled buy, from one of the targets at Glenway Avenue. *See, e.g., United States v. Hawkins*, 278 Fed. Appx. 629, 635 (6th Cir. 2009) ("[I]ndependant police corroboration may be established by a police-monitored controlled buy such as those that occurred in the present case.") (citing *United States v. Coffee,* 434 F.3d 887 (6th Cir. 2006)). Instead, officers happened upon marijuana in plain view, searched a target, and used the fruits of that search (two bags of marijuana and "several hundred dollars") to obtain a warrant for all of 4403 Glenway Avenue. However, "several hundred dollars" is a relatively small quantity when compared to the sums usually cited in connection with drug trafficking. *See, e.g., United States v. Six Thousand Dollars in United States Currency*, No. 3:12 CV 1326, 2013 U.S. Dist. LEXIS 130554, *12 (N.D. Ohio Sept. 12, 2013) ("Of the currency, $1,512.50 in stacked bills was found in Redd's right and

left front pants pockets, $6,000 was found in Smith's left-rear pocket, and $19,000 was found in a black bag between the two front seats of the van.") (citing *United States v. $99,990 in U.S. Currency*, 69 F. App'x 757, 759 (6th Cir. 2003)). Furthermore, the total amount of marijuana Heard had on his person amounted to only a couple of ounces (Tr. 43-48), which is hardly indicative of drug trafficking. That said, the information before the magistrate indicated that there were *two* bags of marijuana, which would arguably be unnecessary if the marijuana were merely for personal use. Thus, the affidavit before the magistrate indicating that a convicted drug dealer had more than one bag of marijuana on him – at the very location where an informant said the target sold drugs – is ultimately sufficient to corroborate the anonymous tip in this context. To be clear, it is the undersigned's view that the government has met the "substantial independent police corroboration" standard, but barely.

The next question is whether the discovery of marijuana on Heard's person justified a search warrant for all of 4403 Glenway Avenue.

### iii. Nexus

The discovery of marijuana on a target does not give law enforcement *carte blanche* to search any business establishment the target is physically occupying at the time of the discovery. Whether such a search is appropriate depends on "whether the information known by the affiant and conveyed to the magistrate makes it fairly probable that there will be additional contraband or evidence of a crime in the place to be searched." *Brooks*, 594 F.3d at 494 (citing *Berry*, 565 F.3d at 338). "To justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place." *United States v.*

10

*Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) . "There must, in other words, be a 'nexus between the place to be searched and the evidence sought.'" *Id*.

In the context of drug trafficking, this Court must note that the Sixth Circuit has found the presence of marijuana at a target's residence – even marijuana consistent with personal use – sufficient to create the requisite nexus between the evidence sought and the residence to be searched. *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016); *United States v. Brooks*, 594 F.3d 488, 494 (6th Cir. 2010). In other words, the right of access to the residence leads to a reasonable inference that the seller will store the controlled substances at the residence. The same rule applies to a business if the target is an owner or employee of the business. *Ybarra v. Ill.*, 444 U.S. 85, 88, 100 S. Ct. 338, 340, 62 L. Ed. 2d 238, 243 (1979). That is, the right of access to the business leads to a reasonable inference that the seller of the controlled substances will store the controlled substances at the business. Likewise, a nexus may also be established between a business open to the public and a nonemployee or non-owner target if there is reason to believe that target is storing controlled substances on the premises. *See, e.g., Chavez-Quintanilla v. United States*, 788 A.2d 564, 565, 2002 D.C. App. LEXIS 2, at *3. Therefore, this Court must view the affidavit with an eye toward whether the affiant conveyed information to the magistrate demonstrating a nexus between marijuana found on Heard, and the likelihood that additional contraband would be found in parts of the business establishment off-limits to the public. As discussed below, the Court concludes that the government has established the requisite nexus.

Here, law enforcement knew prior to obtaining a warrant that Antonio Nelson was part-owner of the establishments at 4403 Glenway Avenue (P2). Indeed, Nelson was the individual who was later given the inventory of the seized items. *See* Return on Search

Warrant for Glenway Avenue. Heard was not an owner or employee. The affiant makes no effort to expressly state why law enforcement believed that that the discovery of marijuana on Heard meant that he or his associates were storing marijuana on the premises. However, it was still reasonable for the magistrate to conclude that additional contraband would be found at 4403 Glenway Avenue, because the affidavit contains information establishing Heard's association with another individual with access to the non-public portions of the store (P1;P2). Specifically, the affidavit states that Heard drove to the location with Brown, who works at the barbershop and had recently been indicted for felony possession of marijuana. While the affidavit cited no evidence that Heard stored marijuana at the establishment – such as a statement that during a sale (controlled or otherwise) he retrieved marijuana from behind the counter, an office, or a storage area – an affidavit is judged on what it contains, not what it lacks. *Allen*, 211 F.3d at 75. Here, the affidavit contains information placing Heard on-site with more than one bag of marijuana, after having arrived with an employee with access to the non-public portions of the establishment. Furthermore, the affidavit stated that – prior to the search – Heard had been seen "walking out of a rear employee area of the athletic store[.]" (P1) This gave the magistrate enough information to conclude that it was "fairly probable" that additional contraband would be found in the non-public areas of 4402 Glenway Avenue. *Brooks*, 594 F.3d at 494. To be clear, however, the Court reaches this conclusion only because the affiant was able to corroborate Heard's association with Brown, an employee of the establishment; otherwise, Heard's possession of two bags of marijuana at a business open to the public would not automatically be sufficient to obtain a search warrant for the non-public portions of the business establishment. A contrary rule would, in theory, give law enforcement license to search the entirety of any

establishment upon the discovery that a patron or invitee possesses even a misdemeanor amount of marijuana for personal use. However, given that this invitee in possession arrived with an employee with access to the non-public portions of the building, the affidavit creates the requisite nexus, but – again – barely.

### B. Search 2—10515 Hadley Road

#### 1. Probable Cause

Other than a "couple of ounces" of marijuana on Heard's person, law enforcement did not find drugs at the Glenway Avenue establishment. Thus, law enforcement was unable to cite the discovery of additional drugs to obtain a search warrant for 10515 Hadley Road, where Erik McCoy and "Derrick" were said to reside. Instead, the second affidavit was largely identical to the first, except that it also cited the discovery of paraphernalia at the Glenway Avenue establishment. Specifically, the application stated that law enforcement found "electronic scales, packaging materials, a handgun box, handgun ammunition, and a handgun magazine" at 4403 Glenway Avenue (P2). The affidavit also stated that officers found mail addressed to Erik McCoy (P2). The affidavit does not state the address listed on the mail recovered. The affidavit contains no information corroborating that either McCoy or Heard resided at 10515 Hadley Road, other than a statement that a "vehicle registered to Derrick Heard is currently parked in the driveway." (P2)

Even if the Court assumes that the anonymous tipster's information had sufficiently corroborated drug sales at Glenway Avenue, the Court must still determine whether "the information known by the affiant and conveyed to the magistrate makes it fairly probable that there will be additional contraband or evidence of a crime" found at 10515 Hadley Road.

13

*Brooks*, 594 F.3d at 494 (citing *Berry*, 565 F.3d at 338). With respect to drug-related offenses, the "observation of drug trafficking outside of the dealer's home can provide probable cause to search the dealer's house*.*" *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005) (citing cases). "None of these cases, however, supports the proposition that the defendant's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home"—there must be more. *Id.* In *Frazier*, "[t]he court did not indicate whether the 'more' could simply be corroborated confidential informant statements or whether some direct evidence physically tying drug dealing to the premises to be searched is required." *United States v. Howell*, No. 1:15-CR-120, 2016 U.S. Dist. LEXIS 112427, at *30-31 (W.D. Mich. Aug. 23, 2016).

More recently, however, the Sixth Circuit stated that:

> our cases teach, as a general matter, that if the affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity, or the evidence of this connection is unreliable, it cannot be inferred that drugs will be found in the defendants' home—even if the defendant is a known drug dealer.

*United States v. Brown*, 828 F.3d 375, 384 (6th Cir. June 27, 2016), *but see United States v. Williams*, 544 F.3d 683, 688 (6th Cir. 2008) (stating that "we join other circuits which have held, in cases involving a variety of suspected crimes, that an issuing judge may infer that a criminal suspect keeps the instrumentalities and fruits of his crime in his residence")) (internal quotation marks omitted).

*Brown* and *Williams* are at odds. However, *Brown* is more recent, and aligns with other Sixth Circuit cases that seek a connection between the residence to be searched and

14

suspected drug dealing—beyond the defendant's status as a drug dealer. *See, e.g., United States v. Gunter*, 266 Fed. Appx. 415 (6th Cir. 2008) (noting that Sixth Circuit precedent establishes that there is a nexus between a drug dealer's criminal activity and the dealer's residence when there is reliable evidence connecting the criminal activity to the residence) (vacated in part on other grounds); *United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002) (rejecting district court's finding of an insufficient nexus, because government had "clearly established a connection between Moore's residence at 2335 Cooper Terrace, where the package from Los Angeles [containing drugs] was delivered, and McDaniels and Miggins' apartment"); *United States v. King*, No. 95-1409, 1995 U.S. App. LEXIS 36059, at *5 (6th Cir. 1995) (rejecting argument that search lacked probable cause; reasoning that "police observed defendant exit 11335 Minock, sell the informer cocaine, and return to the house," which observations "support the conclusion that . . . [defendant] was using his house as a base to sell drugs"). Furthermore, to the extent that *Williams* supports the proposition that there is automatically probable cause to search the residence of any drug dealer, such a rule undercuts the Supreme Court's rejection of "rigid rules, bright-line tests, and mechanistic inquiries" when evaluating probable cause. *Brown*, 828 F.3d 375 at 384.

Here, even considering statements of the anonymous tipster, the affidavit includes no facts that "directly connect" the Hadley Road residence to "drug dealing." *Brown*, 828 F.3d 375 at 384. The tipster had seen unspecified quantities of marijuana there, but had never seen a transaction there. Furthermore, the Glenway Avenue search yielded no drugs or weapons. Instead, it yielded a scale, packaging materials, a handgun box, handgun ammunition, and a handgun magazine– none of which attached to Heard or McCoy.

15

Seemingly aware that the foregoing items could belong to virtually any owner or employee of the two business establishments at 4403 Glenway Avenue, the affiant stated that he also "recovered mail inside to Erik McCoy." (D2) Curiously, the affiant does not state whether the mail reflected the Glenway Avenue address, or the Hadley Road address. Either way, a piece of mail to McCoy – who, according to the tipster, worked at the barbershop – is not surprising and hardly links any of the paraphernalia to McCoy or Heard. Furthermore, the affidavit fails to corroborate that McCoy and Heard were associated. The affidavit does not even include the standard averment that the officer's "training and experience" tells him that "drug traffickers conceal evidence in their residence." *United States v. Remble*, 1:05-cr-113, 2006 U.S. Dist. LEXIS 9829 (S.D. Ohio 2006). Perhaps the affiant could not make such an averment prior to the search of Hadley Road, since the officer never made observations of "drug trafficking" to support a search the alleged dealer's house. *Frazier*, 423 F.3d at 532. Specifically, before the search of Hadley Road occurred, no drug transaction was observed, no controlled buy occurred, no weapons were found, and no drugs were recovered beyond a "couple of ounces" of marijuana on Heard's person.

Accordingly, the affidavit failed to establish that "additional contraband or evidence of a crime" would be found at 10515 Hadley Road. *Brooks*, 594 F.3d at 494. The magistrate lacked probable cause to issue the warrant.

### 2. Exclusionary Rule

The good faith exception to the exclusionary does not apply to the evidence seized from Hadley Road. Exclusion is required if an affidavit supporting a search warrant "is so

lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Brown*, 828 F.3d at 385 (internal quotation marks omitted).

In *Brown*, the Sixth Circuit found probable cause lacking, and that the good faith exception did not save the fruits of an invalid search. There, the affidavit submitted in support of the search warrant stated that Brown was an active participant in the attempted delivery of heroin, a drug dog had alerted to the odor of narcotics in the Brown's vehicle, the vehicle was registered to Brown at his residence, and Brown had a felony drug-trafficking history. Additionally, the affidavit noted the discovery of a text message on a phone believed to belong to Brown. The text massage stated: "He said 1175 or 1125 for one." In the affiant's opinion, the phone message was consistent with drug-trafficking communications. The affiant further stated that the residence would contain the "fruits or other evidence of a conspiracy to distribute heroin."

The trial court denied Brown's motion to suppress, and the Sixth Circuit reversed. *Id*. at 386. The affidavit in support of the warrant application failed to establish a nexus between the alleged drug trafficking and Brown's residence. Furthermore, the good faith exception did not apply: "[s]ave for a passing reference to Brown's car registration, the affidavit is devoid of facts connecting the residence to the alleged drug dealing activity." *Id*.

Here, the affidavit contained arguably less evidence of drug trafficking than the affidavit in *Brown*. There is nothing in the affidavit, other than the anonymous tipster's information, to get the officers to Hadley Road. The Hadley Road affidavit is virtually identical to the Glenway Avenue affidavit, with two supplements. First, in addition to the

17

paraphernalia recovered, there was mail with an unspecified address to McCoy. Second, on the day of the search, officers observed a car registered to Heard parked at the Hadley Road residence. However, the recovered paraphernalia at the Glenway Avenue address does not attach itself to either Heard or McCoy. Both the barbershop and the athletic apparel store were connected business establishments, where several employees had access to the non-public areas. Furthermore, the mail addressed to McCoy is of virtually no value, because he worked at the barbershop. The affiant did not even attempt to specify which address the mail listed. Ultimately, the only corroboration that attaches to the defendants is Heard's individual possession of two bags of marijuana in a public establishment, and a car (which was never linked to Glenway Avenue) registered to him and parked at the residence. This "passing reference" to Heard's car registration does not save the search. *Brown*, 828 F.3d at 385. Nor does the marijuana found on Heard's person. *United States v. McPhearson*, 469 F.3d 518, 525 (6th Cir. 2006). Tellingly, law enforcement did not seek a search warrant for Heard's residence when the marijuana was initially discovered on Heard's person. Law enforcement waited, presumably believing that the fruits of the Glenway Avenue search would help them surpass the probable cause hurdle necessary to get to Hadley Road. Thereafter, officers used paraphernalia bearing no apparent connection to the residence to obtain a second warrant, despite the requirement that an affidavit "include facts that directly connect the residence with the suspected drug dealing activity[.]" *Brown*, 828 F.3d at 384. Law enforcement could not manifest objective good faith in relying on a warrant based on an affidavit which so lacked a nexus to the residence.

Accordingly, the good-faith exception does not apply to the evidence seized from 10515 Hadley Road.

III.     CONCLUSION

For the foregoing reasons, and consistent with the above:

(1)     McCoy's Motion (Doc. 33) for a *Franks* Hearing is **GRANTED,** consistent with the Court's earlier decision to allow a hearing; and
(2)     Defendants' Motions to Suppress (Docs. 31 and 32) are **DENIED IN PART and GRANTED IN PART**.  The evidence found at Hadley Road is hereby **SUPPRESSED**.

**IT IS SO ORDERED.**

                                                                                ___s/Michael R. Barrett_____
                                                                                **Hon. Michael R. Barrett**
                                                                                **United States District Court**